IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTONIO GANDARA, SR., as the legal guardian of Antonio Gandara, Jr.,<br><br>Plaintiff,<br><br>v.<br><br>KANE COUNTY, Kane County Sheriff RONALD HAIN, et al.,<br><br>Defendants. | No. 21-cv-03819<br><br>Judge Andrea R. Wood |

## MEMORANDUM OPINION AND ORDER

Antonio Gandara, Jr. ("Gandara") was remanded into custody at the Kane County Jail ("Jail") after being found mentally unfit to stand trial in Kane County Circuit Court. While at the Jail, Gandara frustrated attempts to complete a medical evaluation by refusing to speak, staring intently at the jail cell wall, and otherwise exhibiting psychotic behavior. After just over two weeks, he refused food and recreational time and exhibited an unsteady gait. Soon after, he collapsed in his cell and was diagnosed with hypernatremia, leading to a hypoxic brain injury and rendering him disabled and reliant on a caregiver. Gandara's father, Plaintiff Antonio Gandara, Sr. ("Plaintiff") has brought this lawsuit against Defendants Kane County, Ronald Hain (in his official capacity as Kane County Sheriff), Wexford Health Sources, Inc. ("Wexford"), and several Wexford employees for, among other things, deliberate indifference to Gandara's health and safety. Before the Court is Kane County and Hain's ("County Defendants") motion to dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 22.) For the reasons stated below, the motion is granted.

## BACKGROUND

For purposes of County Defendants' motion to dismiss, the Court "accept[s] all well-pleaded facts as true and draw[s] all reasonable inferences in favor of the non-moving party." *Bell v. City of Country Club Hills*, 841 F.3d 713, 716 (7th Cir. 2016). The Second Amended Complaint ("SAC") alleges as follows.

Following an arrest in July 2020, a judge of the Kane County Circuit Court found Gandara "mentally unfit to stand trial" and sent him to the Jail "for the purpose of an immediate medical evaluation and placement in a treatment facility to restore his mental fitness to stand trial." (SAC ¶ 23, Dkt. No. 51.) Wexford provides healthcare to inmates and prisoners held in custody in the State of Illinois. (*Id.* ¶ 11.) Once Gandara was in custody, six different Wexford employees attempted to evaluate him medically. (*Id.* ¶¶ 25–30.) But the evaluation was never completed. Instead, during each attempt, Gandara refused to speak or participate and exhibited "psychotic behavior." (*Id.* ¶¶ 25–30.) Plaintiff also sent correspondence to a Wexford employee outlining his son's troubled psychological history. (*Id.* ¶ 27.)

After a few weeks in the Jail, Gandara's behavior came to the attention of a Sheriff's deputy. Upon noticing that Gandara "did not eat breakfast, refused shower/rec. time, and appeared to have [an] unsteady gait," the deputy notified a Wexford employee and a food log was started for Gandara. (*Id.* ¶ 32.) The next day, Gandara collapsed in his cell and he was subsequently diagnosed with hypernatremia at Northwestern Medicine Delnor Hospital. (*Id.* ¶ 33.) Gandara's hypernatremia caused a hypoxic brain injury, "leaving him wholly disabled and dependent on a care giver." (*Id.* ¶ 40.) During his weeks in the Jail, Wexford staff and the Jail did not coordinate care. (*Id.* ¶ 39.)

Plaintiff has brought the present lawsuit on behalf of his son against Kane County; Hain, in his official capacity as Kane County Sheriff; Wexford; and a number of Wexford employees

who provided health services to inmates at the Jail. The present motion addresses only the three claims against County Defendants.[1] Count I asserts a claim against Kane County pursuant to 42 U.S.C. § 1983 for the alleged violation of Gandara's Fourteenth Amendment rights through the deliberate indifference to his health and safety while at the Jail. Count II sets forth a § 1983 claim against Hain based on *Monell v. Department of Social Services of the City of New York.*, 436 U.S. 658 (1978), alleging that the Jail violated Gandara's rights as a result of a practice, policy, or custom authorized by Hain. And finally, Count VII sets forth an indemnification claim under state law against Kane County.

## DISCUSSION

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

---

[1] County Defendants initially filed the present motion to dismiss in response to the First Amended Complaint. When Plaintiff was subsequently granted leave to file the Second Amended Complaint to add an additional claim against the Wexford defendants, the parties agreed that the previously filed motion and briefing would be considered as directed toward the Second Amended Complaint.

I.  Section 1983 Claim against Kane County (Count I)

Kane County argues that it cannot be held liable under § 1983 for the harms allegedly suffered by Gandara because the Sheriff, not the County, bears responsibility for the Jail, and the County neither makes policy for nor employs the Sheriff.

Plaintiff mounts no rebuttal. In opposing County Defendants' motion to dismiss, his argument is limited to the § 1983 claim against Hain. But Count I of the SAC is directed against only Kane County. (*Compare* First Am. Compl. ¶¶ 29–35, Dkt. No. 19, *with* SAC ¶¶ 52–58.)[2] In any case, Hain, not Kane County, controls the Jail. *See Moy v. County of Cook*, 640 N.E.2d 926, 928–31 (Ill. 1994); 55 ILCS 5/3-6017 ("[The sheriff] shall have the custody and care of the courthouse and jail of his or her county, except as is otherwise provided."). And "in Illinois, the Sheriff is an independently elected officer who is accountable only to the people, rather than to the County board." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 305 n.4 (7th Cir. 2010); *see also Franklin v. Zaruba*, 150 F.3d 682, 686 (7th Cir. 1998) ("[S]heriffs are agents of the county, but they are separate from the county boards to such a degree that the county boards cannot be held liable for their actions under *respondeat superior*."). In other words, Kane County bears no substantive liability for actions allegedly taken by Hain and the Wexford defendants. *See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 ("We have consistently refused to hold municipalities liable under a theory of *respondeat superior*."); *Thompson v. Duke*, 882 F.2d 1180, 1187 (7th Cir. 1989) ("Thompson cannot maintain a section 1983 action

---

[2] At times, Plaintiff appears to make roundabout references to the County in his brief—for example, he contends that "[t]hese allegations are sufficient to assert a deliberate indifference claim against Sheriff Hain and put the Defendants on notice as to Plaintiff's claims that all Defendants were aware of [Gandara's] serious medical needs and displayed deliberate indifference to those needs . . . ." (Defs.' Mot. to Dismiss at 3.) But even if such references address the claim against Kane County, rather than just the claim against Hain, they fail to respond effectively to the arguments with respect to Kane County in County Defendants' motion.

against Cook County for 'practices, policies, or actions' which are unrelated to that entity. We therefore affirm the district court's grant of summary judgment in favor of Cook County under *Monell*."). For these reasons, Count I is dismissed.

      **II.**     ***Monell* Claim against Sheriff Hain (Count II)**

Even though Hain, in his role as Kane County Sheriff, is responsible for the Jail, he can be held liable under § 1983—absent his personal involvement in the alleged constitutional violation—only if "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the Sheriff's] officers." *Monell*, 436 U.S. at 690. The Seventh Circuit recognizes three ways in which a government unit can responsible for constitutional violations under § 1983:

> (1) through an express policy that, when enforced, causes a constitutional deprivation; (2) through a wide-spread practice that although not authorized by written law and express policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) through an allegation that the constitutional injury was caused by a person with final decision policymaking authority.

*Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005) (internal quotation marks omitted). The SAC identifies four specific practices at the Jail that allegedly "put pretrial detainees . . . at serious risk": (1) insufficient staffing that prevented adequate cell checks; (2) not requiring "correctional officers to perform regular cell checks;" (3) not "maintain[ing] food logs to ensure pretrial detainees with known psychological disabilities were adequately fed and hydrated;" and (4) "[f]ailing to promulgate standards, policies, and procedures for medical evaluation, treatment and care." (SAC ¶ 63.)

5

County Defendants argue that Plaintiff has failed to plead widespread abuse or any other occurrences to support a *Monell* claim.[3] In response, Plaintiff asserts that he need not present multiple occurrences but instead can overcome a Rule 12(b)(6) motion by pleading based on Gandara's own experience.

Notably, while the FAC was limited to Gandara's own situation, the SAC now includes allegations regarding four other instances between 2013 and 2019 in which the Jail was sued by inmates for issues involving deficient medical treatment. (SAC ¶¶ 47–51.) Still, the four instances alleged in the SAC—which span a six-year period and are presented without an explanation as to how they support an inference of a widespread practice—are insufficient plausibly to suggest a "specific pattern or series of incidents that support the general allegations of a custom or policy." *Hollins v. City of Milwaukee*, 574 F.3d 822, 827 (7th Cir. 2009). Indeed, outside of the fact that each incident involved a bad medical outcome, it is difficult to glean from the SAC how the various incidents are at all similar to Gandara's situation. According to the SAC, one of the instances involved a pretrial detainee who was injured falling from a bunk bed. (SAC ¶ 50.) Another consists of a medical malpractice suit alleging failure to provide an inmate with necessary medication. (*Id.* ¶ 47.) A third involved medical personnel allegedly ignoring complaints of pain. (*Id.* ¶ 49.) And the final one concerned allegedly improper psychiatric care leading to a suicide attempt. (*Id.* ¶ 48.) But the SAC does not allege, or support a plausible inference, that cell checks or food logs (*i.e.*, the practices that Plaintiff alleges to have been deficient with respect to Gandara's care) would have prevented any of the other instances of alleged deliberate indifferent or even have reduced the risk of them occurring.

---

[3] The SAC also alleges that Hain had final policymaking authority (SAC ¶ 66), which is one of the Seventh Circuit's recognized *Monell* prongs. But Plaintiff has clarified in his brief that he "is solely alleging a *Monell* violation under the second prong." (Pl's Opp'n to Mot. to Dismiss at 8–9, Dkt. No. 17.)

The four other isolated incidents of alleged deliberate indifference occurring over a span of six years share little in common with Gandara's situation. At most, the incidents might be read as supporting Plaintiff's fourth allegation of an improper policy: "[f]ailing to promulgate standards, policies, and procedures for medical evaluation, treatment and care." (*Id.* ¶ 63.) But nothing in the SAC otherwise indicates that the Jail lacks such standards. To the contrary, the SAC alleges that multiple Wexford employees attempted to evaluate Gandara and there is no indication that they raised any concerns with Hain or his employees. The SAC also does not allege that Hain was aware of the letter Plaintiff sent to a Wexford employee detailing his son's psychological history. The four disparate instances of prior alleged deliberate indifference to health and safety, combined with the allegations regarding the alleged indifference to Gandara's health and safety, are not enough to support a plausible inference of a broad failure to promulgate adequate standards, policies, and procedures for medical evaluation, treatment, and care. In short, Plaintiff has failed to plead sufficient facts to establish an inference that there is a widespread practice "so permanent and well-settled as to constitute a custom or usage with the force of law." *Calhoun*, 408 at 379 (internal quotation marks omitted).

Plaintiff cites *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016), for the proposition that he need not identify "even one other individual" affected by the alleged policy or practice to state a claim. But in *White*, the finding of a widespread policy from a single instance was based on a standard-issue warrant form used by the Chicago Police Department. *See White*, 829 F.3d at 844. The use of such a standard-issue warrant form for a large police department plausibly suggests a widespread practice. It is true that single-individual allegations may be sufficient "where . . . the complaint charges the municipality or other governmental entity with having engaged in improper conduct directly." *Jackson v. Marion County*, 66 F.3d

7

151, 152–53 (7th Cir. 1995). But Plaintiff here alleges that it was Wexford staff, not Hain or Jail officials, who "engaged in improper conduct directly" as to Gandara.

While it is possible to clear the plausibility hurdle by pleading one's own experience, "it is necessarily more difficult . . . because what is needed is evidence that there is a true municipal policy at issue, not a random event." *Grieverson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008). And the individualized experience of Gandara was of Jail officials allegedly reporting medical events and delegating medical questions to Wexford medical staff. The Seventh Circuit has made clear that when jail officials "reasonably relied on the judgment of medical personnel," they did not act with deliberate indifference. *Miranda v. Cnty. of Lake*, 900 F.3d 335, 343 (7th Cir. 2018). The inadequate treatment of Gandara that Plaintiff alleges came entirely at the hands of Wexford employees. (*See* SAC ¶¶ 25–31.) The SAC specifically alleges that a Sheriff's deputy informing Wexford personnel that Gandara "did not eat breakfast, refused shower/rec. time, and appeared to have unsteady gait." (*Id.* ¶ 32.) At that point, a food log was started. (*Id.*) In other words, the deputy noted a potential medical issue and reported it to medical personnel, who subsequently acted on the report. What the SAC does ***not*** allege is that the Sheriff, or any of his employees, "ha[d] a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011). Medical personnel repeatedly evaluated Gandara and declined to take more drastic steps, such as admitting him to a mental health facility or ordering closer observation. There is no indication that Jail officials should have gleaned that Gandara was being mistreated.

County Defendants also contend that Plaintiff fails to allege that any widespread policy was the moving force behind Gandara's injury. Plaintiff responds by arguing that it was the failure to provide treatment in response to Gandara's actions that constituted the moving force

leading to his injury. But again, all that Plaintiff alleges is a generalized complaint regarding the sufficiency of medical treatment in the Jail; he does not adequately allege a specific Jail policy that led to Gandara's injury. *See Thomas*, 604 F.3d at 307 ("The relevant question for the causation requirement is whether the Sheriff's policy of understaffing was the reason the CMTs could not access the forms *on those days* that Smith and the other inmates claimed to have submitted their requests." (emphasis in original)).

Under Plaintiff's view, any bad medical outcome would be enough to establish a *Monell* claim if some different action may have been taken somewhere along the line that might have avoided that outcome. But such a tangential relationship between the alleged municipal action and the alleged constitutional violation is not enough to plead that the action was a moving force behind the violation. *See Brown*, 520 U.S. at 404 ("[A] plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) ("At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged."). Thus, Plaintiff has not adequately that the Sheriff's "policies [were] the ***moving*** force behind the constitutional violation." *Thomas*, 604 F.3d at 306 (emphasis in original).

For these reasons, Count II is dismissed.

### III.  Indemnification (Count VII)

Lastly, County Defendants seek dismissal of Count VII, which seeks indemnification by Kane County "for any judgments in this case arising from the Defendants' actions." (SAC ¶ 97.) The Court has dismissed both claims implicating the County and the Sheriff. Because those claims have been dismissed, there is nothing for the County potentially to indemnify. *See Askew*

9

*v. Sheriff of Cook Cnty., Ill.*, 568 F.3d 632, 637 (7th Cir. 2009). For that reason, Claim VII seeking indemnification is dismissed as to Kane County.

## CONCLUSION

Accordingly, for the reasons stated above, County Defendants' motion to dismiss Counts I, II, and VII (Dkt. No. 22) is granted. Counts I, II, and VII are dismissed as to the County Defendants.

ENTERED:

Dated: November 1, 2022

Andrea R. Wood
United States District Judge